IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL BURKS and CYNTHIA      §
BURKS,                          §
                                §
        Plaintiffs,             §
                                §
v.                              §      CIVIL ACTION NO. H-14-591
                                §
METROPOLITAN LLOYDS INSURANCE   §
COMPANY OF TEXAS,               §
                                §
        Defendants.             §

MEMORANDUM AND ORDER

Pending is Defendant Metropolitan Lloyds Insurance Company of
Texas' Motion for Summary Judgment (Document No. 22).   After
carefully considering the motion, response, reply, and the
applicable law, the Court concludes for the reasons that follow
that the motion should be granted.

I. Background

This suit arises from a dispute between Plaintiffs Michael
Burks and Cynthia Burks ("Plaintiffs") and their homeowners
insurance provider, Defendant Metropolitan Lloyds Insurance Company
of Texas ("Defendant"), which at all relevant times insured
Plaintiffs' home in Magnolia, Texas (the "Property").[1]

_____

[1] *See* Document No. 1 at 8 of 28 to 20 of 28 (Pls.' Orig.
Pet.).

Approximately three months after an April 27, 2013 hailstorm caused damage to the Property, Plaintiffs filed a claim with Defendant on their Homeowners Insurance Policy (the "Policy").[2]   Defendant engaged Tailored Adjustment Services ("Tailored") to perform an inspection of the Property, and Michael Eason ("Eason"), a licensed adjuster with Tailored, promptly inspected the Property within two weeks of when Metropolitan received Plaintiffs' claim.[3]

Excerpts of Eason's appraisal in the summary judgment record indicate that he made detailed inspections of the Property, and included detailed measurements of the surface areas of the roof, their total perimeter lengths, the numbers of squares, and the total ridge lengths.  Eason noted in his report that the Property's main roof and garage roof had been replaced due to storm damage in 2009, and did not find any storm-related damage to the shingles of the main roof or garage roof.[4]  Eason did note hail damage to three HVAC caps and a window bead, and recommended full replacement of a metal roof and a fiberglass roof on lean tos attached to the garage, four metal panels on a separate carport, and a metal gazebo

_____

[2] Document No. 22-4 at 1; see also Document No. 22-2 (the Policy).

[3] Document Nos. 22-4, 26-1.

[4] Document No. 22-4 at 1.

roof.[5]  Eason estimated a total replacement cost of $5,080.68.[6]
Plaintiffs state that during his inspection, "Eason informed [a
local roofing contractor present at the Property] and Mr. Burks
that he was instructed by Metropolitan not to pay for the roof
because Metropolitan paid to replace the roof in 2009 and was not
going to pay for it again."[7]

Three days after Eason's inspection, Defendant notified
Plaintiffs of the estimate and, after applying their $3,900
deductible, issued payment of $1,180.68.[8]  Plaintiff Michael Burks
called Defendant to complain that the amount was "totally
insufficient," that "we would be probably taking other action," and
asked what he should do with the check.  He was told just to void
it and Metropolitan would cancel it.[9]  Defendant, apparently
misinterpreting Plaintiffs' intent, sent to Plaintiffs a letter
stating in relevant part:

---

[5] Id.

[6] Id.

[7] Document No. 24 at 2-3.  Eason denies in an affidavit that
he received such an instruction from Defendant, see Document No.
26-1, and testifies that it was Plaintiff Michael Burks who during
the inspection made Eason aware that "the main roof and garage roof
were replaced due to storm damage in 2009."  Eason testifies that
he then made inquiry of Metropolitan, and was informed that the
2009 damages estimate was not available because it was too old.
Nonetheless, on summary judgment the Court views all disputed
evidence in the light most favorable to non-movant.

[8] Id. at 1, 4.

[9] Document No. 24-2 at 75:24-76:8 (Dep. of Michael Burks).

This letter will confirm our conversation of 8/12/13, in which you stated you were no longer interested in pursuing this claim. Since you are voluntarily withdrawing your claim for 4/27/13, we will not be investigating this loss any further. Our file will be considered closed.

Please accept this letter as notification your claim has been closed without benefit of payment as you requested.

If you have any questions or wish to reopen this investigation, please call me.[10]

Six months after the foregoing exchange, Plaintiffs filed this suit alleging breach of contract, fraud, breach of the covenant of good faith and fair dealing, and violations of Sections 541 and 542 of the Texas Insurance Code.[11] Defendant removed the case to this Court and shortly thereafter Defendant's counsel wrote to Plaintiffs' counsel that Defendant "would like to reissue the check for $1,180.68," which was not accepted.[12]

---

[10] Document No. 22-4 at 6.  Plaintiffs dispute the statement that they had voluntarily withdrawn their claim. *See* Document No. 24-2 at 76:14-77:8 ("Q. I'm sorry, let me start over.  Do you deny that you had a conversation with Metropolitan in August of 2013 after receiving the estimate and the letter we've marked as Exhibit 3-- A. [Mr. Burks] No.  Q. -- indicating that you wanted to withdraw the claim?  A. Withdraw the claim is not accurate. Q. Did you say that the amount of the payment wasn't worth making a claim?  A. Maybe something to that degree.  It's -- I was upset and felt like we were not being treated fairly and I said I'm not going to settle for this amount.  Q. So you may have said something along the lines if that's the only -- if that's the amount of the payment it is not worth making a claim?  A. There could have been something like that.  I don't recall my exact words.").

[11] Document No. 1 at 8 of 28 to 20 of 28.

[12] Document No. 24-10 at 2.

4

Even before the initial Rule 16 scheduling conference was held in this case, the parties in June 2014 proceeded to a binding appraisal process in accordance with the terms of the Policy.[13]  The two party-appointed appraisers and their chosen umpire made an appraisal award finding that the replacement cost value was $28,912.02, and the actual cash value was $23,648.07.[14]  Defendant then paid to Plaintiffs $20,088.93, representing the actual cash value of the appraised loss less the $3,900 deductible, plus $340.86 in penalty interest.[15]  Plaintiffs accepted the payment from Defendants, but argue the appraisal award is inadequate "because Metropolitan's proposed settlement did not include for elements of damages such as attorneys' fees and statutory penalties."[16]

Defendant now moves for summary judgment, arguing that Plaintiffs' breach of contract claim fails because Defendant timely paid the appraisal award as required by the Policy, and that Plaintiffs' non-contractual claims (which the Court had severed for

---

[13] Document No. 22-5 at 1; Document No. 24 at 4-5; *see also* Document No. 22-2 at 29 of 53 (appraisal process provision of the Policy).

[14] Document No. 22-3 at 1, 4; Document No. 22-5 at 1.

[15] Document No. 22-5 at 1, 4.

[16] Document No. 24 at 8; Document No. 22 at 5.

separate trial[17]) fail because bad faith claims require a breach of contract.[18]

## II. <u>Evidentiary Objection</u>

Defendant objects to and moves to strike as hearsay portions of the deposition testimony of Plaintiff Michael Burks and the affidavit of roofing contractor Jimmy Bates produced by Plaintiffs, testifying that Eason stated during his inspection of the Property that Defendant had told him that it had just replaced the Property's roof in 2009 and was unwilling to do so again.[19] Plaintiffs argue, among other things, that Eason's statement is admissible nonhearsay under Rule 801(d)(2)(D) because Eason was Defendant's agent speaking about a matter within the scope of his relationship with Defendant, to which argument Defendant does not

---

[17] Document No. 15.

[18] Document No. 22.

[19] Document No. 26 at 1-2; Document No. 24-2 at 101 (Dep. of Michael Burks); Document No. 24-3 (Aff. of Jimmy Bates).

Plaintiffs move to strike Defendant's reply and motion to strike Plaintiffs' evidence, arguing that the motion to strike failed to comply with Local Rule 7.1(D), requiring a statement of conference, and that the reply was unauthorized under Local Rules 7.7 and untimely. Document No. 29. Local Rule 7.1(D)'s requirement of a statement of conference excepts motions to strike under Rule 12(f) of the Federal Rules of Civil Procedure, and reply briefs are not specifically addressed in the Local Rules but are generally permitted when, as here, they respond to arguments newly raised by the non-movant. Accordingly, Plaintiffs' motion to strike is DENIED.

reply.[20]   Although Eason was not an employee of Defendant, he appears to have been acting as Defendant's agent when Defendant hired Eason's company to inspect the Property, and his alleged statement reporting his principal's unwillingness again to replace the roof involved a matter within the scope of that relationship. *See* <u>Beck v. Haik</u>, 377 F.3d 624, 639-40 (6th Cir. 2004) (statements of consultant about matter within scope of employment admissible under Rule 801(d)(2)(D)) ("Though there is little precedent on the matter, courts confronting similar factual situations have tended to hold contractors and advisors to fall within the 'agency' relationship contemplated by Rule 801(d)(2)(D).") (citations omitted), *overruled on other grounds by* <u>Adkins v. Wolever</u>, 554 F.3d 650 (6th Cir. 2009).   Accordingly, Defendant's objection is OVERRULED.


## III. <u>Legal Standard</u>

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a).   Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing

---

[20] Document No. 28 at 3-4.

a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's]

8

favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

IV. Analysis

A.   Breach of Contract

Plaintiffs allege that Defendant's "failure and/or refusal . . . to pay adequate compensation," constitutes a breach of Defendant's insurance contract with Plaintiffs.[21] Defendant argues that Defendant's prompt payment of the appraisal award to Plaintiffs fulfills Defendant's contractual obligations under the Policy and precludes Plaintiffs' claim for breach of contract.[22] "Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'" Blum's Furniture Co. v. Certain Underwriters at Lloyds London, 459 F. App'x 366, 368 (5th Cir. 2012) (quoting Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 787 (Tex. App.-Houston [14th Dist.] 2004, no pet.).

---

[21] Document No. 1 at 15 of 18.

[22] Document No. 22 at 5-6.

Plaintiffs do not dispute that the parties engaged in the binding appraisal process established by the Policy, but argue that their dispute with Defendant is "not about the valuation of damage to the roof," but rather "whether the roof damage would be covered at all," such that the appraisal process did not fully resolve their dispute.[23] Plaintiffs' theory seems to be that if the insured claims storm damages to a half dozen structures on the insured property, but the insurer finds storm damages to only four of the structures, that the insurer has breached the contract if the appraisal process results in a finding of damage to either or both of the other two structures, even though the insured accepts the insurer's payment of the full appraisal award. Plaintiffs cite no legal authority in support of this argument, and the Court knows of none. Accordingly, Defendant having timely paid to Plaintiffs the full amount of the appraisal award, and Plaintiffs having accepted the same, Plaintiffs are estopped from presenting a breach of contract claim on the policy. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.[24] Blum's Furniture, 459 F. App'x at 368; Maq-Dolphus, Inc. v. Ohio Cas. Ins. Co., 906 F. Supp. 2d 642, 648 (S.D. Tex. 2012) (Harmon, J.) ("Plaintiffs, having accepted timely payment of the binding and enforceable appraisal award, are thus estopped from maintaining a

---

[23] Document No. 24 at 8.

[24] Document No. 1 at 15 of 28.

10

breach of contract claim against Defendant."); <u>Barry v. Allstate Texas Lloyds</u>, No. 4:14-cv-870, 2015 WL 1470429, at *4 (S.D. Tex. March 31, 2015) (Hoyt, J.) ("Here, in the absence of evidence raising a genuine issue of fact as to a ground for setting aside the appraisal award in this case, the plaintiff, having accepted payment of the appraisal award minus any applicable offsets, is estopped from pursuing a breach of contract claim against Allstate.").

B.   <u>Extra-contractual Claims</u>

Defendant argues that Plaintiffs' remaining claims must be dismissed because there was no breach of the insurance contract and bad faith claims require such a breach.[25]  Under Texas law, "in most

---

[25] Document No. 22 at 6-11.  All parties refer to Plaintiffs' extra-contractual claims as "bad faith claims"; neither side distinguishes among Plaintiffs' claim for breach of the covenant of good faith and fair dealing--a common law bad faith claim--and their claims for common law fraud and violations of Sections 541 and 542 of the Texas Insurance Code.  "Liability under § 541 of the Texas Insurance Code is reviewed under the 'same standard as a common law bad faith claim.'" <u>Mag-Dolphus</u>, 906 F. Supp. 2d at 649 (quoting <u>Blum's Furniture Co. v. Certain Underwriters at Lloyds London</u>, No. CIV.A. H-09-3479, 2011 WL 819491, at *4 (S.D. Tex. Mar. 2, 2011) (Atlas, J.), aff'd, 459 F. App'x 366, and collecting cases); <u>Douglas v. State Farm Lloyds</u>, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999) (Crone, M.J.) ("According to Texas law, extra-contractual tort claims pursuant to the Texas Insurance Code . . . require the same predicate for recovery as bad faith causes of action.") (quoting <u>Lawson v. Potomac Ins. Co. of Illinois</u>, No. CIV. 3:98-CV-0692H, 1998 WL 641809, at *4 (N.D. Tex. Sept. 14, 1998)).  Here, Plaintiffs produce no summary judgment evidence of a misrepresentation and do not defend their fraud claim as a claim independent of their bad faith claims.  Plaintiffs' claim for noncompliance with Section 542's "prompt payment of claims"

circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996). "The only recognized exceptions to this rule are if the insurer 'commit[s] some act, so extreme, that would cause injury independent of the policy claim,' or fails 'to timely investigate the insured's claim.'" Blum's Furniture, 459 F. App'x at 369 (quoting Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995)).

Plaintiffs argue that the Akin rule generally prohibiting bad faith claims without a breach of contract should be limited to cases where in fact there is no insurance coverage.[26]   Such a distinction has not been found in the Texas cases and appears entirely unwarranted, especially in light of the Fifth Circuit's persuasive opinion applying the Akin rule in Blum's Furniture.  The court there held that the insured raised no genuine issue of material fact on its bad faith claims when the insurer, as here, did not deny coverage and paid the appraisal amount, which the

---

requirement is not a bad faith claim, but it is nevertheless barred by Defendant's payment of the appraisal award. See Mag-Dolphus, 906 F. Supp. 2d at 652 ("Under Texas law . . . 'full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law.'") (quoting In re Slavonic Mut. Fire Ins. Ass'n, 308 S.W.3d at 556, 563-64 (Tex. App.–Houston [14th Dist.] 2010) and collecting cases).

[26] Document No. 24 at 11-13.

insured accepted.[27]  *Blum Furniture*, 459 F. App'x at 368-69; *see also, e.g.*, Barry, 2015 WL 1470429, at *4 (finding in case where claim was covered by insurance policy that an insured is generally precluded from maintaining a bad faith claim where his breach of contract claim fails) (citing Stoker, Akin, and Blum's Furniture).

Plaintiffs argue in the alternative that *Blum Furniture*'s exceptions apply because Defendant "sent its adjuster out to inspect the property with instructions not to include roof damage in adjusting the claim" simply because Defendant had replaced the roof in the past.[28]  Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not produced evidence that Defendant committed an act "so extreme, that [it] would cause injury independent of the policy claim." Blum's Furniture, 459 F. App'x at 369.  The Fifth Circuit noted two years ago that "[t]he Stoker language [creating the exception noted in Blum's Furniture] has frequently been discussed, but in seventeen years since the decision appeared, no Texas court has yet held that recovery is

---

[27] Plaintiffs argue that Blum's Furniture is not precedent because it is an unpublished opinion. Id. at 13 & n.3; FED. R. APP. P. 32.1(a).  Even if not a binding precedent, Blum's Furniture is highly persuasive authority, particularly in the absence of any contrary authority.  This Court has repeatedly relied on the reasoning of Blum's Furniture in analyzing non-contractual claims in this context. *E.g.*, Barry, 2015 WL 1470429, at *3; Gabriel v. Allstate Texas Lloyds, No. 7:13-CV-181, 2013 WL 7885700, at *4 (S.D. Tex. Nov. 1, 2013) (Alvarez, J.); Caso v. Allstate Texas Lloyds, No. 7:12-CV-478, 2014 WL 528192, at *7 (S.D. Tex. Feb. 7, 2014) (Alvarez, J.).

[28] Document No. 24 at 14.

13

available for an insurer's extreme act, causing injury independent of the policy claim." <u>Mid-Continent Cas. Co. v. Eland Energy, Inc.</u>, 709 F.3d 515, 521-22 (5th Cir. 2013).  Even if an initial predetermination not to provide coverage for damage to Plaintiffs' roof were otherwise sufficiently extreme to qualify for the exception--a proposition for which Plaintiffs cite no authority--Plaintiffs have produced no evidence of a resulting injury independent of the policy claim.  The summary judgment evidence is uncontroverted that Defendant never denied coverage of Plaintiffs' Property under the Policy, it promptly investigated the claim, and it tendered payment based on its licensed appraiser's findings.  To the extent that Defendant's instructions to Eason may have caused an initial underpayment of Plaintiffs' claim, like any other valuation dispute, Plaintiffs' remedy was to invoke the appraisal process established in the Policy.  Indeed, when the parties engaged in this contractual remedy and an appraisal award was made, Defendant timely paid to Plaintiffs the amount in full and Plaintiffs accepted it.  Accordingly, Defendant is entitled to summary judgment on Plaintiffs' extra-contractual claims.  *See* <u>Mag-Dolphus</u>, 906 F. Supp. 2d at 649 (bad faith claim subject to summary judgment dismissal where "Plaintiffs' claim appears to be premised on their dispute of their property's loss valuation," insurance policy "contained an appraisal provision providing Plaintiffs a means for disputing and negotiating the amount of

loss," and "Plaintiffs negotiated and accepted the appraisal award."); <u>Barry</u>, 2015 WL 1470429, at *4-7 (granting summary judgment on extra-contractual claims where plaintiff's breach of contract claim was estopped and plaintiff failed to produce evidence of an act so extreme as to cause injury independent of policy claim or of failure to timely investigate the insured's claim); <u>Gabriel v. Allstate Texas Lloyds</u>, No. 7:13-CV-181, 2013 WL 7885700, at *4-7 (S.D. Tex. Nov. 1, 2013) (same); <u>Caso v. Allstate Texas Lloyds</u>, No. 7:12-CV-478, 2014 WL 528192, at *6-8 (S.D. Tex. Feb. 7, 2014) (same).

## V. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Metropolitan Lloyds Insurance Company of Texas' Motion for Summary Judgment (Document No. 22) is GRANTED and Plaintiffs Michael Burks and Cynthia Burks' claims are DISMISSED with prejudice.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 8th day of July, 2015.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

15